| | | |
|---|---|---|
| In re: | } | Chapter 7 |
| | } | Case No. 22-40216-EDK |
| TOP LINE GRANITE DESIGN, INC. | } | |
| Debtor | } | |
| | } | |
| | } | |
| STEVEN WEISS, Chapter 7 trustee | } | AP No. 23-04035 |
| Plaintiff | } | |
| | } | |
| v. | } | |
| | } | |
| JOHN V. TESTA, individually, | } | |
| d/b/a Kitchen Concepts, and as trustee | } | |
| of the John. V. Testa revocable trust, | } | |
| Defendants | } | |
| | } | |

## DEFENDANT'S MEMORANDUM OF LAW REGARDING RIGHT TO JURY TRIAL

### SUMMARY OF LEGAL ARGUMENT

The Supreme Court decisions in Schoenthal, Katchen, Granfinanciera, and Langenkamp all recognize the right to a jury trial under the Seventh Amendment for cases arising out of bankruptcy in the following circumstances: (1) when a party never filed a Proof of Claim; (2) when the statutory claim in the complaint is derived from a cause of action rooted in English common law prior to the merger of courts of law and equity and that cause of action was traditionally decided by a court of law, and (3) when the statutory relief sought in the complaint is legal in nature such as a claim of a private right for monetary damages rather than a public right such as an equitable claim for accounting in a turnover lawsuit. The discussion below includes a long history of Supreme Court decisions on the right to a jury trial, which leaves little question that Mr. Testa meets each of these requirements. It is undisputed that Mr. Testa never filed a Proof of Claim or undertook any action to accede to the jurisdiction of the bankruptcy court. With regard to the issue of the common law roots of both fraudulent conveyance and

1

preference lawsuits, there are ample quotes from the Supreme Court cases that each of these causes of action was resolved in English courts of law rather than courts of equity. Finally, it is undisputed that the only relief sought in the complaint is a demand for monetary damages. The Granfinanciera decision makes it clear that merely because Congress deemed a fraudulent conveyance action to be "core" under 28 USC 157 did not alter the rules with respect to the right to a jury trial under the Seventh Amendment. The Granfinanciera case is on all fours with the instant case in that they both involve a fraudulent conveyance claim where no proof of claim was filed. This case is dispositive on this issue. With regard to the preference claim, the Schoenthal case is on point as it involves a preference case that the Supreme Court specifically found to be derived from the English common law and resolved in courts of law rather than courts of equity. And its result is consistent with the three elements cited above. The later Supreme Court cases all rely on the Schoenthal holding. The First Circuit's Braunstein decision relies on these Supreme Court cases, and its analysis leads to the same conclusion: Mr. Testa is entitled to a jury trial. The fact that the Chapter 93A claim may not be tried by a jury does not change this conclusion as a court may not try equitable claims first because to do so would subject the jury's findings to the principles of collateral estoppel. There is little question that Mr. Testa is entitled to a jury trial in the first instance.

### RELEVANT FACTUAL AND PROCEDURAL HISTORY

1. On March 25, 2022, Top Line Granite Design, Inc., 353 Middlesex Road, Tewksbury, MA 01879, filed a Chapter 11 bankruptcy. The Massachusetts Secretary of State's office indicates that Edmilson Ramos is the sole owner and officer of this corporation.

2. On June 29, 2023, the chapter 11 was converted to Chapter 7.

3. Top Line Granite owed the defendants a substantial sum of money on the date of its bankruptcy filing, as demonstrated by the post-petition mortgage attached to the complaint. The debtor, however, never listed Mr. Testa as a creditor in that bankruptcy. The mortgage confirms that the defendants were owed money as of the date of the petition and should have been listed as creditors in the Chapter 11 case.

4. The creditor list was never amended. Due to this oversight, the defendant never received notice of the bankruptcy filing, notice of any 341 hearing, or notice of any of the plans, amended plans, and other pleadings filed in the Chapter 11 case.

5. The complaint alleges that John Testa meets the definition of an insider as that term is defined in the bankruptcy code. However, the only fact alleging supporting that characterization is Edmilson Ramo's reference to Mr. Testa as a "friend."

6. Neither John Testa nor the revocable trust is mentioned in any manner in the bankruptcy schedules. The only reference to defendants in the bankruptcy filing is in the Statement of Financial Affairs, which references certain alleged preferential transfers to Kitchen Concepts. The Statement of Financial Affairs clearly lists these payments as "payments within 90 days." There is nothing within SOFA or any other bankruptcy schedule indicating that John Testa is an insider.

7. The interrogatory answers received from the plaintiff admit that the plaintiff has learned of no other facts other than Mr. Ramos' characterization of him as a "friend." This occurred at a 341 hearing. The plaintiff has not supplemented that answer in any way since that time. The complaint clearly overreaches as there are no facts substantiating the bald allegation that Mr. Testa is an insider of Top Line.

8. On information and belief, there was no inquiry by the Subchapter V trustee to investigate the listing of Kitchen Concepts in SOFA, which might have clarified Mr. Testa's creditor status in the chapter 11 case and provided him within notice and an opportunity to be heard on the issue of his alleged "insider" status in this chapter 11 case.

9. Having to defend a preference claim alleging an insider status of one year versus 90 days without any proof of such fact has dramatically escalated the costs of Mr. Testa's defense in this Adversary Proceeding.

10. Given that this complaint sued both Mr. Testa individually as well as the trustee, the AP raises legal issues surrounding the liability of a revocable trust formed under New Hampshire law that includes Mr. Testa's home in Hollis, NH. The liability of a trust is separate and distinct from the liability of John Testa, individually, particularly in light of the spendthrift clause in the trust purporting to protect it from creditors of John Testa. Resolution of these issues may involve the application of the New Hampshire Trust Code in RSA 564-B:1-101 et seq. rather than the U.S. Bankruptcy Code.

11. It is undisputed that in the Chapter 11 case, this Court never sought to exercise jurisdiction over Mr. Testa either individually or as a trustee, nor did he ever submit himself to the jurisdiction of the bankruptcy court by engaging in the claims allowance process.

12. A review of the Pacer docket reveals that one reason the U.S. Trustee objected to confirmation of the debtor's Chapter 11 plan is the lucrative nature of the preference actions listed in SOFA if converted to Chapter 7. Not coincidentally, perhaps that is what happened.

13. Three 341 hearings were scheduled in this case. However, Mr. Testa never received notice of any of those hearings. And at least one of those hearings involved substantial questioning by the trustee of Mr. Ramos regarding John Testa.

14. Unlike other creditors listed in Chapter 11, Mr. Testa never received notice of that hearing or any of the other Chapter 11 filings at any time so that he could protect his rights.

15. It is undisputed that Mr. Testa, in any capacity, ever filed a Proof of Claim in this case or otherwise acceded to the jurisdiction of this court.

16. On December 26, 2023, the trustee commenced this Adversary Proceeding by filing a Complaint against John Testa dba Kitchen Concepts and John V. Testa as trustee of John V. Testa Revocable Trust. (the "Adversary Proceeding"). [ECF No. 1].

4

17. Through the Complaint, the Trustee seeks to recover the following –

> COUNT 1 – avoidance of fraudulent transfers under Section 548 of $1,678,000. Despite testimony from Edmilson Ramos that these were loans and corroborating documents from the debtor support that conclusion. Discovery documents provided to date indicate that the defendant's loans to the debtor far exceed the amount repaid by the debtor.

> COUNT 2 – avoidance of preferential transfers under Sec. 547 of $1,393,000 alleging defendants were insiders, with the only allegation in the complaint being that Edmilson Ramos said Mr. Testa was "a friend." Interrogatory answers admit that the plaintiff has discovered no additional facts to warrant the characterization. More importantly, discovery to date indicates that subsequent advances of "new value" by defendants to the debtor during both the one-year and 90-day period prior to filing exceed all payments made by the debtor during those times.

> COUNT 3 – violation of ch. 93A of indeterminate amount alleging that a violation of usury interest limits was a "per se" ch 93A violation. However, the clear weight of authority in Massachusetts state case law indicates otherwise.

Pacer docket, ECF No 1.

16. On April 25, 2024, in their Answer to the Complaint, the Defendant claimed a right to a jury trial on all claims so triable. *See* ECF No. 19.

17. On April 25, 2024, in response to Defendant's request for a jury trial, the Bankruptcy Court (Katz, J.) ordered that all parties file a Joint Pretrial Memorandum indicating if the parties consent to a jury trial in the bankruptcy court. [ECF No. 20].

18. In the *Joint Pretrial Statement*, Defendant argued that he was entitled to a trial by jury on multiple claims set forth in the Complaint. *See* ECF No. 21. Plaintiff took no position on the matter other than to indicate "plaintiff has not demanded a jury trial."

19. At a pretrial conference on June 13, 2024, the court ordered that the defendant file a brief in support of its position that the court does not have the authority to enter final orders and the defendant's right to a jury trial. (ECF No. 25).

**DISCUSSION OF LEGAL AUTHORITY**

Under the Seventh Amendment to the United States Constitution, "suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved." As the highest law of the land, the touchstone for determining a party's right to a jury in a bankruptcy proceeding, of course, are the decisions of the U.S. Supreme Court as the final arbiter of the limits of bankruptcy court jurisdiction—Stern v. Marshall, 564 U.S. 462, 482-487 (2011). In Stern v. Marshall, 564 U.S. 462, 482-487 (2011), the Supreme Court changed the landscape of bankruptcy jurisdiction by holding that the constitutional grant of judicial power to Article III courts, not the statutory designation of 'core' or 'non-core,' determines whether a bankruptcy judge may issue a final determination." Even if a matter is deemed "core," the bankruptcy court may not have authority to issue final orders. See discussion infra.

Fortunately, there have been a number of Supreme Court decisions arising out of bankruptcies where the Court has examined when a litigant is entitled to a jury trial in a matter arising out of bankruptcy as a matter of law. One of the earliest decisions was that of Schoenthal v. Irving Trust Co, 287 U.S. 92 (1932). There, the lower court had denied the defendant's request in a preference lawsuit for a jury trial, restricting him to a court of equity rather than a court of law. The Supreme Court reversed the ruling that the preferences "were money payments of ascertained and definite amounts [and] … The bill discloses no facts that call for an accounting or other equitable relief." Id at 95. The Court specifically recognized that one reason for its decision was the common law roots of preference actions in England, stating:

> In England, long prior to the enactment of our first Judiciary Act, common-law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankruptcy. (citations omitted). Suits to recover preferences constitute no part of the proceedings in bankruptcy but concern controversies arising out of it. … defendants were entitled upon proper application to have the suit transferred and trial by jury. Undoubtedly, they might have waived that right. But the record discloses no act or omission … suggest[ing] that they were willing that the case should be tried in equity.

Id. at 94-95, 96. In ruling that the defendant would have been entitled to a jury trial in a court of law rather than one of equity, the Supreme Court noted that he had not waived his right to a jury trial in any manner. The notion of waiver will become a common thread that will be relied on in

6

later Supreme Court cases examining this issue in other contexts. As in <u>Schoenthal</u>, it is undisputed that Mr. Testa never engaged in any actions that would constitute a waiver, such as filing a Proof of Claim or otherwise acceding to the jurisdiction of the Bankruptcy Court. Indeed, given he was never accorded the status of a creditor in that case, none of the rights accorded creditors in a Chapter 11 case were offered to him.

In 1965, the Supreme Court faced a similar albeit distinguishable issue involving a claim to a jury trial when the creditor had filed a Proof of Claim. <u>Katchen v. Landy</u>, 382 U.S. 323 (1965). In <u>Katchen</u>, the trustee filed a preference counterclaim as part of an objection to a Proof of Claim. The court found the bankruptcy court's ruling on the trustee's objection made the issue res judicata. The court refused to allow the petitioner a jury trial as a matter of law due to the waiver of that right by engaging in the claims allowance process. The court specifically cited the result in <u>Schoenthal</u> with approval:

> But although the **petitioner might be entitled to a jury trial on the issue of preference if he presented no claim in the bankruptcy** proceeding and awaited a federal plenary action by the trustee, <u>Schoenthal v. Irving Trust Co</u>., 287 U.S. 92, 53S.Ct. 50. When the same issues are part of the process of allowance and disallowance of claims, it is triable in equity.

<u>Katchen</u> supra at 336 (emphasis supplied). The clear thread between <u>Schoenthal</u> and <u>Katchen</u> is that the issue of waiver controls the outcome of whether a defendant facing a preference claim by the trustee is entitled to a jury trial. It is undisputed in the instant case that Mr. Testa never engaged in the claims allowance process so as to accede to the jurisdiction of this court.

The next decision in the line of Supreme Court cases discussing the right to a jury trial in matters arising out of bankruptcy was that of <u>Granfinanciera v. Nordberg</u>, 492 U.S. 33 (1989). This case is on all fours factually with the instant case because Mr. Testa, as the plaintiff, never filed a Proof of Claim and, upon getting sued claimed the right to a jury trial. In 1984, Congress amended the Bankruptcy Code, drawing the distinction between "core" and "non-core" proceedings and classifying fraudulent conveyances as a "core proceeding." 28 USC 157(B)(2)(H). The trustee argued that Congress's designation of a fraudulent conveyance as a core proceeding invested the bankruptcy court with jurisdiction to issue final orders in such cases, and to hold otherwise would dismantle the statutory scheme. The Court of Appeals agreed. However, the Supreme Court reversed, noting:

7

The purely taxonomic change cannot alter our Seventh Amendment analysis. Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity. Nor can Congress' assignment be justified on the ground that jury trials of fraudulent conveyance actions would "go far to dismantle the statutory or that bankruptcy proceedings have been placed in 'an administrative forum with which the jury would be incompatible. … the Seventh Amendment entitles petitioners to the jury trial they requested.

Id. at 61, 65 (citations omitted). This language should put to rest any notion that the listing of fraudulent conveyances and preference actions as "core" proceedings in 28 USC 157 somehow vests jurisdiction in the bankruptcy court as there is no support that this designation changes the Supreme Court's analysis one iota from its previous decisions in Schoenthal and Katchen.

In reversing the lower court, the Supreme Court again relied on the fact that no proof of claim had been filed to submit to the jurisdiction of the bankruptcy court. The court made it clear it was basing its decision on the previous holdings in Schoenthal and Katchen stating:

> **We read Schoenthal and Katchen as holding that, under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate … Because petitioners here, like the petitioner in Schoenthal, have not filed claims against the estate, respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims.'** Nor is that action integral to the restructuring of debtor-creditor relations. Congress, therefore, cannot divest petitions of their Seventh Amendment right to a trial by jury. Katchen thus supports the result we reach today.

Id. at 58-59 (citations omitted) (emphasis supplied). The Granfinanciera decision points inescapably to only one conclusion, given that both that case and the instant one involve fraudulent conveyance claims where no proof of claim has been filed. Mr. Testa is clearly entitled to a jury trial on the fraudulent conveyance claim.

Based on the previous decisions in Schoenthal and Katchen, once again followed by the Granfinanciera holding, it is clear that the decision should be the same with respect to Mr. Testa's claim for a jury trial on the preference claim. In its holding, there is dicta indicating the Supreme Court would make no distinction between fraudulent conveyance claims and preference claims in terms of analyzing a defendant's right to a jury trial under the Seventh Amendment given that they are both rooted in the common law:

> There is no dispute that actions to recover preferential or fraudulent transfers were often brought into law in late 18[th] century England. As we noted in <u>Schoenthal v. Irving Trust Co</u>., 287 U.S. 92, 94, 53 S.Ct. 50, 51, 77 L.Ed. 185 (1932):
>
> In England, long prior to the enactment of our first Judiciary Act, common law actions of trover and money had and received were resorted to for the recovery of preferential payments by bankruptcy." See, e.g., Smith v. Payne, 6 T.R. 152,m 101 Engl Rep. 484.

<u>Granfinanciera </u>at 43. This language just continues the same reasoning of the <u>Schoenthal</u> and <u>Katchen</u> cases. Given that they both involve preference actions, there is no logical way to distinguish such action from the result dictated by <u>Granfinanciera </u>for fraudulent conveyance actions. Both arose from the common law of England, which assigned jurisdiction to courts of law where a jury trial may be had rather than those of equity. The trustee's complaint seeks monetary damages and no equitable remedy such as an accounting.

At least when it comes to fraudulent conveyance or preference claims, the Supreme Court has made it clear that rather than focusing on the labels of 'core' or 'noncore,' the more important issue in deciding the right to a jury trial is whether a defendant has submitted to the jurisdiction of the bankruptcy court by engaging in the process of "allowance and disallowance of claims." 28 USC 157(b)(2)(B). To make sure its meaning was crystal clear, the court stated:

> We could not have made plainer that our holding in *Schoenthal* retained its vitality: **"{A}lthough petitioner might be entitled to a jury trial on the issues of preference if he presented no claim in the bankruptcy proceeding and awaited a federal plenary action by the trustee when the same issue arises as part of the process of allowance and disallowance of claims, it is triable in equity**."

<u>Granfinanciera</u>, 492 U.S. at 58 (citations omitted) (emphasis supplied). See <u>SEC v. Jarkesy</u>, 144 S.Ct. 2117 (2024) (a statute authorizing the SEC to impose civil penalties does not deprive a defendant of the right to a jury trial given that the statutory penalties were derived from the common law action for fraud, and, therefore, the public rights exception does not apply.) The public rights exception does not apply when a statute has roots in the common law as acknowledged to be true for both fraudulent conveyance and preference actions in the line of cases above.

It is also well-established that fraudulent conveyance claims involve private, not public, rights. *See* <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. at 55 ("a bankruptcy trustee's right to recover a fraudulent conveyance ... [is]more accurately characterized as a private rather than a public right"); *see also* <u>Stern</u>, 564 U.S. at 492. The Seventh Amendment protects a litigant's

right to a trial by jury if a cause of action is legal rather than equitable and involves a matter of private right. *Weisfelner v. Blavatnik* (*In reLyondell Chem. Co.*), 467 B.R. 712, 720 (S.D.N.Y. 2012) (noting that "fraudulent conveyance ... claims do not fall within the public rights exception"); *Kirschner v. Agoglia* (*In re Refco, Inc.*), No. 11 Civ. 8250, 2012 WL 1622496, at *3 (S.D.N.Y. May 9, 2012) ("To now conclude that the very claim presented in Granfinanciera—a fraudulent conveyance claim—is a `public rights' claim would be totally at odds with the *Stern* Court's analogy to Granfinanciera."); Adelphia Recovery Tr. v. FLP Grp., Inc*.,* No. 11 Civ. 6847(PAC), 2012 WL 264180, at *4 (S.D.N.Y. Jan. 30, 2012) (noting that "a fraudulent transfer claim involves a private right") (collecting cases); Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe*, LLP,* No. 11 civ. 6337(CM),2011 WL 6780600, at *3 (S.D.N.Y. Dec. 23, 2011) (finding that a fraudulent conveyance claim involved private rights).

There are many well-reasoned decisions in accord with Schoenthal, Katchen, and Granfianciera's opinions.  Growers Packing Co. v. Community Bank of Homestead, 134 B.R. 438 (D. S.D.Fla. 1991); In re: North Carolina Hosp. Ass'n Trust Fund, 112 B.R. 759 (Bank. E.D.N.C. 1990) (those defendants who filed a POC not entitled to a jury trial but those that did not are entitled to a jury trial on preference claims); Redeye II, LLC v. MorrisAnderson &; Assocs. Ltd. (In re Swift Air, L.L.C.), 624 B.R. 694  (D. Ariz. 2020) (see discussion below).

In the Growers Packing case, the court relied on the language in Granfinanciera that preference claims were part of the English common law, stating as follows:

> In late 18th-century England, actions to recover preferential transfers "were often brought in law." Id. 492 U.S. at 43, 109 S.Ct. at 2791. Noting that these claims sometimes were brought in equity, the Supreme Court explained that the distinction rested on the type of recovery sought. Where the plaintiff sought "a definite sum of money"—as opposed to equitable remedies, such as the setting aside of the transfer or an accounting to determine the amount of money owed—the claim was handled in the law courts rather than in chancery. Because the claim in Granfinanciera was for a specific amount of money, the Supreme Court determined that, in 18th-century England, it would have been brought in a court of law. On that basis, the Supreme Court concluded that the claim was legal. Granfinanciera, 492 U.S. at 47, 109 S.Ct. at 2794.

Growers Packing Co.,134 B.R. at 440.   For that reason, the Court found the preference action to the enforcement of a private right for monetary damages not equitable in nature, granting the claimant the right to a jury trial.

In another case involving no proof of claim, another federal court reversed the bankruptcy court's denial of a jury trial, holding it does not implicate the public rights exception, stating:

> The claims at issue are preference claims arising under 11 U.S.C. § 547. Such claims are *Stern* claims, In re AWTR Liquidation, 547 B.R. at 836, and they do not fall under the public rights exception to *Stern*, see Granfinanciera, 492 U.S. at 34–35, 109 S.Ct. 2782. … Thus, the Bankruptcy Court did not have the authority to enter a final order on the preference claims at issue. Instead, the Court will treat the Bankruptcy Court's order regarding the preference claims as proposed findings of fact and conclusions of law subject to de novo review per Federal Rule of Bankruptcy Procedure 8018.1.2...

Redeye II, LLC v. Morris Anderson & Assocs. Ltd. (In re Swift Air, L.L.C.), 624 B.R. 694, 703-704 (D. Ariz. 2020).

Confirming the holdings in the previous line of Supreme Court cases is the Langenkamp case; the Supreme Court was called on to decide whether a creditor who submitted a claim against the bankruptcy estate and was then sued by the trustee in a preference action was entitled to a jury trial under the Seventh Amendment. Langenkamp v. Culp, 498 U.S. 42 (1991). Not surprisingly, the Court followed its holdings in Schoenthal, Katchen, and Granfinanciera, finding the creditor was not entitled to a jury trial because the creditor had invoked the bankruptcy court's jurisdiction by engaging in the claims allowance process. In reversing the court below, the Supreme Court was careful to distinguish its holding from what it otherwise would have been had no Proof of Claim been filed:

> In *Granfinanciera*, we recognized that by filing a claim against a bankruptcy estate, the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process, which is triable only in equity. In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial. **If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances, the preference defendant is entitled to a jury trial. 492 US. At 58-59. Accordingly, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.**

Id at 44-45 (certain citations omitted) (emphasis supplied). This language admits no ambiguity. A direct line can be traced from this case back to Schoenthal, Katchen, and Granfinanciera. On

11

each occasion, the linchpin for how the Supreme Court decides 7th Amendment cases arising out of a bankruptcy case claiming the right to a jury trial is by looking at whether the defendant availed himself of the claims allowance process.  It is undisputed that these decisions favor Mr. Testa, given he has taken no affirmative action to submit to the jurisdiction of this court.  Any finding to the contrary would be directly contrary to this line of cases.

Despite this case law indicating this case should be tried in the first instance to a jury, defendants do not concede that the preference issue should be any different in light of Schoenthal, Katchen, and Granfinanciera's holdings.  The First Circuit has not addressed the issue before the court today.  However, in a case distinguishable by its facts, the First Circuit was called on to decide whether a former debtor in possession was entitled to a jury trial on a motion for turnover under Section 542.  As might be expected in light of Supreme Court precedent, the Court in Braunstein found that McCabe was not entitled to a jury trial given that Section 542 provides for an equitable remedy of accounting, a remedy which is peculiarly a creature of equity, unlike a demand for monetary damages.  Braunstein 571 F.3d at 122.  In so holding, the First Circuit made it clear it was relying on Granfinanciera and was careful to distinguish the facts in that case from preference and fraudulent conveyance claims that had their roots in the common law:

> **The [Supreme] Court concluded that actions to set aside fraudulent conveyances and preferences have clear analogs in actions brought to the law in England in the late 18th century and involve remedies that are purely legal in nature.**

Braunstein 571 F.3d at 117 (emphasis supplied).  Indeed, Footnote 9 reiterates the First Circuit's acknowledgment of previous Supreme Court opinions in this area, noting:

> Similarly, in Schoenthal v. Irving Trust Co., 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932), the Court characterized an action to recover a preference as legal, not equitable. The court noted that in England, litigants brought common-law actions to recover preferential payments. Id. at 94, 53 S.Ct. 50. The court also said such actions are not part of the proceedings in bankruptcy "but concern controversies arising out of it" and could be brought in state courts. Id. at 94-95, 53 S.Ct. 50; see also Granfinanciera, 492 U.S. at 57-58 & n. 13, 109 S.Ct. 2782 (noting that, under Schoenthal, a jury trial is required in a preference action if the defendant presents no claim in the bankruptcy proceeding but that the issue is an equitable one if it arises as part of the claims allowance process). Construing the remedy sought, the Court stated the case did not call for an accounting or other equitable relief. Schoenthal, 287 U.S. at 95, 53 S.Ct. 50.

> Braunstein, 57` F.3d at 128.  Footnote 9 makes it clear that the First Circuit's decision

would have been different if it had involved a fraudulent conveyance or preference case instead

of a turnover case because those are rooted in the common law rather than being entirely creatures of statute.

The First Circuit, consistent with Supreme Court precedent, has applied a two-step test for courts to consider whether a claim carries a right to a jury trial:

"First, the court must compare the . . . action to 18th-century actions brought in the court of England prior to the merger of the courts of law and equity.'" [*Braunstein*, 571 F.3d at 118] (quoting *Granfinanciera*, 492 U.S. at 42) "The Seventh Amendment 'applies to actions brought to enforce . . . rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century.'" *Id.* (quoting *Granfinanciera*, 492 U.S. at 42). "Second, the court must 'examine the remedy sought and determine whether it is legal or equitable in nature.' . . . This stage of the analysis is more important than the first stage." *Id.*

Ng, 552 B.R. at 788 (quoting *Braunstein*, 571 F.3d at 118). (internal quotation marks omitted).

Since the Supreme Court has clearly recognized the common law roots of both preference and fraudulent conveyance claims in Schoenthal, Katchen, and Granfinanciera, there should be no dispute that the trustee's claims against Mr. Testa are solely derived from a statute having a public purpose.

The "more important" consideration, according to the First Circuit, is whether the asserted claims seek a legal or an equitable remedy. In re Basile, 472 B.R. at 151 ("It is this determination, which the Supreme Court describes as more important than the first, that generally dictates the outcome of a jury demand."); *see also* TRU Creditor Litig. Tr. v. Brandon, No. 3:20cv311 (DJN), 2022 U.S. Dist. LEXIS 86026, at *36 (E.D. Va. May 11, 2022) ("However, the relief sought — the most important factor — weighs in favor of finding the claims legal and, therefore, triable to a jury."). "' Money damages are, of course, the classic form of legal relief.'" Ng, 552 B.R. at 789 (quoting Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)). Furthermore, "a claim for a determinate sum of money suggests legal, not equitable, relief to which a jury trial right applies." Ng, 552 B.R. at 789 (original quotations and citation omitted). Thus, even if the Supreme Court decisions were somehow deemed to be insufficient, this First Circuit decision would lead the court to the same conclusion. There is no question that both fraudulent conveyance and preference claims are rooted in the common law, nor is there any question that the only remedy sought in the complaint against Mr. Testa is that of monetary damages.

One Massachusetts federal district court judge, in denying a motion to remove a bankruptcy matter to federal court based on untimeliness, summarized the black letter law applicable to the right to a jury trial in bankruptcy court as follows:

> In *Langenkamp*, the Supreme Court decided, in brief, that whether a party was entitled to a jury trial in a preference action brought by the trustee of the estate turned on whether that party had triggered the claims allowance process of the bankruptcy court by filing a proof of claim against the estate. 498 U.S. at 44-45, 111 S.Ct. 330; see also *Granfinanciera*, 492 U.S. at 58, 109 S.Ct. 2782 (stating "a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate."). The Court concluded that the respondents, who had timely filed proofs of claim, had submitted themselves to the equitable jurisdiction of the bankruptcy court and, therefore, were no longer entitled to a jury trial. *Langenkamp*, 498 U.S. at 45, 111 S.Ct. 330.

In re Bank of New England Corp., 360 B.R. 1, 6 (D.Mass. 2007).  It is unequivocal that both in the Supreme Court and in the First Circuit, the line of reasoning in the holdings of Schoenthal, Katchen, Granfinanciera, and Langenhamp has not lost its vitality in the First Circuit.

Given that the Granfinanciera's holding alone mandates a jury trial in a fraudulent conveyance case when no proof of claim has been filed, this appears to be dispositive with regard to Mr. Testa's right to a jury trial because there is a caselaw indicating that this result alone should control the court's decision on the preference claim as well.  In *Desmond v. Ng*, 552 B.R. 781, 790 (D. Mass. 2015), the court found, "As [d]efendant is entitled to a jury trial on at least some of the claims brought by the Trustee, the court finds adequate cause under 28 U.S.C. § 157(d) to withdraw the reference to the Bankruptcy Court as to the entire Adversary Proceeding."    *See, e.g., In re Basile*, 472 B.R. at 155 ("Consequently the action must be structured and tried in a manner that preserves the right to a jury trial with respect to the legal claim and issues of common facts must be tried to a jury with the bankruptcy court being bound by those findings.") (original quotations and citation omitted); *In re C.R. Stone Concrete Contractors Inc.*, Nos. 05-11119-WCH, 05-1307, 2013 Bankr. LEXIS 5692, at *69-70 ("[t]herefore, consolidation of the adversary proceeding in the District Court would promote the timely resolution of both the Defendants' claims and the Trustee's counterclaims, help manage the substantial cost of such litigation, avoid inconsistent results and confusion, eliminate a level of appeal, and serve the interests of judicial economy."); *Desmond v. Ng*, 552 B.R. 781, 790 (D. Mass. 2015) ("As [d]efendant is entitled to a jury trial on at least some of the claims brought by

14

the Trustee, the court finds adequate cause under 28 U.S.C. § 157(d) to withdraw the reference to the Bankruptcy Court as to the entire Adversary Proceeding."); <u>*In re Hardwicke Co.*</u>, 56 Bankr. 244, 246-47 (S.D.N.Y. 1985) (noting issues related to the possibility of multiple trials as a basis for granting interlocutory appeal from bankruptcy court). Specifically, if certain claims carry a right to a jury trial, then those claims must be tried first. *See, e.g., In re Basile*, 472 B.R. at 155 ("Consequently the action must be structured and tried in a manner that preserves the right to a jury trial with respect to the legal claim and issues of common facts must be tried to a jury with the bankruptcy court being bound by those findings.") (original quotations and citation omitted); *In re C.R. Stone Concrete Contractors Inc.*, Nos. 05-11119-WCH, 05-1307, 2013 Bankr. LEXIS 5692, at *69-70 ("[t]herefore, consolidation of the adversary proceeding in the District Court would promote the timely resolution of both the Defendants' claims and the Trustee's counterclaims, help manage the substantial cost of such litigation, avoid inconsistent results and confusion, eliminate a level of appeal, and serve the interests of judicial economy."); *Desmond v. Ng*, 552 B.R. 781, 790 (D. Mass. 2015) ("As [d]efendant is entitled to a jury trial on at least some of the claims brought by the Trustee, the court finds adequate cause under 28 U.S.C. § 157(d) to withdraw the reference to the Bankruptcy Court as to the entire Adversary Proceeding."); <u>*In re Hardwicke Co.*</u>, 56 Bankr. 244, 246-47 (S.D.N.Y. 1985) (noting issues related to the possibility of multiple trials as a basis for granting interlocutory appeal from bankruptcy court). With respect to the Chapter 93A claim, even if Mr. Testa is not entitled to a jury trial on that claim, this will not change the result here. Where legal and equitable claims are intertwined, the Seventh Amendment requires that the "facts common to legal and equitable claims must be adjudicated by a jury, and the right to a trial by jury must be preserved even if the legal claims are characterized as incidental to the equitable claims." <u>Ng</u>, 552 B.R. at 788-89 (citing cases) (original quotations omitted). In those instances, "a court may not try the equitable claims first because to do so would subject the jury's findings to the principles of collateral estoppel." <u>Id</u>. at 789 (original quotations and citation omitted); *see also* <u>In re Basile</u>, 472 B.R. 147, 152 (Bank.D.Mass. 2012) ("Because protection of the right to trial by jury is so important, only under the most imperative circumstances…can the right to a jury trial of legal issues be lost through prior determination of equitable claims.") (original quotations and citation omitted). The obvious answer would be for the judge presiding over the jury trial to issue a judicial ruling after

hearing all evidence, given that this claim is inextricably interwoven with the facts and circumstances of the other claims being tried in this case.

The bottom line is that Mr. Testa did not participate one iota in the bankruptcy process. He neither filed a Proof of claim nor participated in the Chapter 11 process in any way. Given these facts, it would be ironic indeed if Mr. Testa were somehow forced to submit to the authority of the bankruptcy court, given he never waived any of the rights traditionally accorded creditors in this court. Treating him the same as a creditor who did file a Proof of Clam would not only be unfair but directly contrary to the law both in the Supreme Court as well as in the First Circuit.

WHEREFORE, the defendant, John Testa individually and as trustee through his attorney, request the following relief:

A. An order permitting a jury trial on the fraudulent conveyance counts pending in the complaint.

B. An order permitting a jury trial on the preference counts pending in the complaint.

C. To the extent that Chapter 93A is not entitled to a jury trial, refer that matter for a judicial ruling at the conclusion of a jury trial to the presiding judge, given that this claim is inextricably intertwined with the facts that would be elicited in a jury trial.

D. Award such other relief as is just and equitable.

Dated: 10/1/2024          Respectfully Submitted

/s/ Richard D. Gaudreau

Richard D. Gaudreau, BMA 04110
Counsel for John Testa,
Individually and as a trustee

Richard D. Gaudreau, Attorney at Law, PC
P.O. Box 1359
Salem, NH 03079
(603) 893-4300
richard@attorneygaudreau.com